1764.

ALLISON
*v.*
COCKRAN.

---

### Hanlon *verſ.* Thayer.

THE Plaintiff (Hanlon's Wife) (1) brings Trover againſt Thayer (a Sheriff) for attaching her Apparell. (2)    There were two Queſtions in this

HANLON
*v.*
THAYER.

Rec. 1764.
Fol. 109.

Articles of Apparell and Ornament of a Wife, owned by her before her Marriage, (except neceſſary wearing Apparell,) are liable to Attachment for the Debts of the Huſband.

was veſted in the Governor and Council as a civil law court, who appointed judges of probate in each county as their delegates or ſubſtitutes. Anc. Chart. 32.    Governor Pownall's Meſſage to the Council in February, 1760, App. III.    3 Hutchinſon's Hiſt. Maſs. 451, note.    2 Maſs. 154.    8 Cuſh. 541.    21 Law Rep. 78, 79.

(1) Mark Hanlon was the plaintiff.    The writ, however, was indorſed by Mary Hanlon, his attorney, who may have conducted the caſe, and thus occaſioned the miſtake.

(2) The common law proceeding by attachment was merely to compel the defendant's appearance where he failed to anſwer the ſummons. The Colony Law of 1644 gave plaintiffs the power to take out either ſummons or attachment in the firſt inſtance.    Anc. Chart. 49.    But the

attachment

this Caſe; one, whether, as the Apparell attached was the Property of Hanlon's Wife before the Intermarriage, it did not make a Difference in the Law from Caſes where Apparell after the Marriage came to the Wife; the other, whether the ſeveral Articles in the Schedule annexed were *all neceſſary* wearing Apparell.

*Mr. Auchmuty,* taking no Notice of the firſt Queſtion, endeavoured to prove the Apparell mentioned was neceſſary, by obſerving, what was neceſſary for one Station in Life was not ſo for another, and ſaid the Law never meant the Word "Neceſſary" in its ſtricteſt Senſe.

*Mr. Chardon for Defendant.* The Argument *ab Inconvenienti* is of very great Weight in the Law, and by admitting all theſe Things (in the Schedule) as *neceſſary* wearing Apparell, would be putting it in the Power of almoſt every Debtor to defraud his Creditor. (3)  To explain and ſhow the Senſe in which

---

attachment being diſcharged by an appearance, as at common law, or at moſt by a judgment, twelve hours before execution, it was afterwards provided in 1650 that goods ſo attached ſhould "ſtand engaged" until the judgment ſhould be ſatisfied.  Ib. 51.  By the Prov. St. of 13 W. 3, the duration of the liability was limited to thirty days after judgment. Ib. 367.  Gen. Sts. c. 123, § 42.  The chattels liable to attachment have always been held to be ſuch only as may legally be taken on execution, and where this latter right is left at the common law, "ſo muſt the right to attach depend upon the common law."  6 Maſs. 244.  By the Colony Law of 1647, officers were prohibited from levying execution on "any man's neceſſary bedding, apparell, tools or arms, neither implements of houſehold which are for the neceſſary upholding of his life." Anc. Chart. 155.

(3) The ſchedule compriſes earrings, necklaces, laces, ribbons, fans,
&c.,

which the Law uſes the Word *Neceſſary*, I cite 4. G. 2, c. 1. (4)

*Mr. Gridley.* Nothing is *neceſſary* in the *Law* but what is neceſſary to defend from the Inclemency of the Weather, (5) or neceſſary to the Degree: But before they can talk highly of Degree they muſt pay their Debts. If any beſides what is barely neceſſary is allowed for Comfort, it is not the Law, but Humanity. The Law here wiſely uſes the Word *Neceſſary*, for the Boundary of Neceſſity is determinate, but Conveniency not, — Conveniency! What is convenient? &c. (a little Rhetorick and concludes.) *Mr. Gridley* alſo ſaid: If a Judge of Probate grant to the Wife of an Inteſtate whoſe Eſtate is inſolvent, two Beds, where *one only* was neceſſary, the other immediately became liable to be attached, and he cited *Hardiſtey & Barney*, (Comber. 356,) where *Holt* ſays if the Party have two Gowns, Sheriff may take one.*

*Mr. Otis* relied chiefly on the Evidence that proved Hanlon never bought or paid for a ſingle Rag

* *Qu.* if 1 Inſt. 351 b, top, would not have been a good Authority?

---

&c. There appears alſo a liſt of neceſſary articles which the defendant tendered back to Mrs. Hanlon before the date of the writ.

(4) Anc. Chart. 481.

(5) " 1 Pᵣ Gloſhoes " (goloſhes) and " 1 Green Embrillo " appear upon the ſchedule, but were not among the articles tendered back as neceſſary. About this time, " Umbrillos " were firſt advertiſed in the papers, and were doubtleſs then conſidered articles of luxury. See Drake's Hiſtory of Boſton, p. 660.

1764.

HANLON
*v.*
THAYER.

Rag of his Wife's Cloaths, but that ſhe brought all with her at the Marriage, and ſaid it had been the Cuſtom univerſally, never to take Cloaths ſo brought, for the Debts of the Huſband.

*Juſtices Oliver & Cuſhing* both ſaid the Caſe was very hard upon the Wife, who brought all theſe Cloaths at Marriage, yet " as they are perſonal Property, they become the Huſband's on Marriage, and therefore liable."

*Ch. Juſt.* I ſhould have been extremely glad if this Caſe had been argued a little more largely by the Gentlemen of the Bar, and more Authorities cited, in Matter of ſo great Conſequence. I always took it to have been the Cuſtom in ſuch Caſes as this, for the Wife to have her Cloaths; in Caſes that have come before me as Judge of Probate I never knew it denied to the Wife where the Eſtate was inſolvent. (6) In the Caſe cited (by Mr. G.) I ſuppoſe the Woman was a Party, and the Debt contracted

---

(6) The Prov. St. of 9 Anne reſerved only " the neceſſary bedding, utenſils and implements of houſehold," where the eſtate was inſolvent. Anc. Chart. 390. At common law, however, there ſeems to have been a queſtion to what extent the widow's " paraphernalia," beyond neceſſary wearing apparel, was liable to creditors of the huſband's eſtate. Bac. Ab. Baron & Feme, C. 3. 1 Dane Ab. 364. And the practice of allowing the widow her apparel in all caſes was afterwards confirmed by Sts. 1783, c. 36 ; 1802, c. 93 ; 1816, c. 95. The Reviſed Statutes, c. 65, § 5, excepted from the inventory of the eſtate " all the articles of apparel or ornament of the widow, according to the degree and eſtate of her huſband," " although his eſtate ſhould be inſolvent." The St. of 1838, c. 145, omits the limitation as to the huſband's degree, and provides that the articles aforeſaid ſhall be conſidered as excluſively belonging to the widow. Gen. Sts. c. 96, § 4.

contracted by her; this alters the Cafe much, but yet I apprehend (here *Ch. Juſt.* makes an Apology for what follows) that this may be one of thofe Cafes where the Juſtice fays a Thing *obiter*, or fuddenly; for one Gown can never be fuppofed fufficient — muſt fhe go naked when that is wafhing? Upon the Whole I think it would be very hard upon the Wife, fhould fuch a Precedent as this take Place, that her *Cloaths* which fhe *brought* in *Marriage* muſt go to difcharge the Hufband's Debts. I fhould think it fafer to verge towards Conveniency than to ſtrain the Word *Neceſſary.* (7)

The *Ch. Juſt.* in the Courfe of this Cafe afked if it would not have been better to have brought Detinue.

**N. B.** The Jury found for the Defendant Cofts.

Adjourned to September 11th — and then met Chief Juſtice.

Lynde, }
Ruffell, } Juſtices.

---

(7) Somewhat fimilar opinions have been fubfequently expreſſed. See 4 Cuſh. 361, *Shaw, C. J.* — " This word is not uſed in its moſt rigid fenfe, as fomething abfolutely indifpenfable, and without which a debtor cannot live." And the exemption of " neceſſary wearing apparel " has been held to extend to cloth in the hands of a tailor. *Richardfon* v. *Bufwell,* 10 Met. 506.